UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   23-MJ-8393-WM

UNITED STATES OF AMERICA

vs.                                                                                              (Under Seal)

**GREGORY SCOTT KEOUGH,**

      Defendant.
_____/

FILED BY____SW____D.C.
Aug 8, 2023
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek M. Maynard)?   **No**

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)?   **No**

3. Did this matter involve the participation of or consultation with now Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023?   **No**

Respectfully submitted,

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

By:   _____
Robin W. Waugh
Assistant United States Attorney
FL Bar No. 0537837
500 South Australian Avenue, Suite 400
West Palm Beach, Florida 33401
Tel: (561)820-8711
Email: robin.waugh@usdoj.gov

AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. 23-MJ-8393-WM |
| GREGORY SCOTT KEOUGH, | ) | |
| Defendant | ) | |

FILED BY ___SW___ D.C.
Aug 8, 2023
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - WPB

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief. On of about the date of <u>March 31, 2020 to in and around February 2021</u>, in the county of <u>Palm Beach</u> in the <u>Southern</u> District of <u>Florida</u>, the defendant violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1343 and | Wire Fraud and |
| 18 U.S.C. § 1957(a) | Engaging in Monetary Transactions in Criminally Derived Proceeds. |

This criminal complaint is based on these facts:

See Attached Affidavit in Support of Criminal Complaint

☑ Continued on the attached sheet.

_____
Complainant's signature

Michelle McDaniel, SA, FBI
Printed name and title

Sworn and Attested to me by Applicant by Telephone (Facetime) pursuant to Fed. R. Crim. P. 4(d) and 4.1

Date: August 8, 2023

_____
Judge's signature

City and state:   West Palm Beach, Florida           William Matthewman, U.S. Magistrate Judge
                                                     Printed name and title

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Michelle McDaniel, being first duly sworn, hereby depose and state as follows:

### I.    INTRODUCTION AND AGENT BACKGROUND

1.     I make this affidavit in support of a criminal complaint charging GREGORY SCOTT KEOUGH ("KEOUGH") with Wire Fraud and Engaging in Monetary Transactions in Criminally Derived Proceeds, in violation of 18 U.S.C. §§ 1343 and 1957(a), respectively, from on or about March 31, 2020 through in and around February 2021, in Palm Beach County, in the Southern District of Florida, and elsewhere.

2.     I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been so employed since June 2021. I currently serve on the Complex Financial Crimes squad in the FBI's Miami Division, out of the West Palm Beach Resident Agency. My duties include investigations of violations of federal laws including bank fraud, wire fraud, mail fraud, aggravated identity theft, and money laundering. I have received training on the proper investigative techniques for these violations, including financial analysis, surveillance techniques; interviewing methods of subjects, witnesses, and victims; and the preparation and execution of arrest and search warrants. I have investigated individuals who committed various types of fraud offenses. Prior to joining the FBI, I spent 14 years employed by AT&T, working in a variety of roles throughout that time, most recently as a district manager in the National Business Organization.

3.     Recently, I have been assigned to work with the Small Business Administration Office of Inspector General ("SBA-OIG") and other law enforcement partners to investigate the Defendant and others involved in possible fraud associated with the stimulus and economic assistance prog]rams created by the federal government in response to the COVID-19 pandemic.

4.     The facts set forth in this affidavit are based upon my personal observations, my

review of records obtained during the course of the investigation, my training and experience, and information I obtained from other law enforcement agents and government personnel. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint, I have not included in this affidavit every detail of the investigation.

### A. The Paycheck Protection Program ("PPP")

5. The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP").

6. The types of businesses eligible for a loan included sole proprietorships. In order to obtain a PPP loan, a qualifying business (through its authorized representative or the sole proprietor) signed and submitted a PPP loan application (Small Business Administration ("SBA") Form 2483) online through the lender's application platform. The PPP loan application required the business (through its authorized representative or the sole proprietor) to acknowledge the program rules and make certain affirmative certifications, in order to be eligible to obtain the PPP loan. The certifications included an attestation that the business was in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes or paid independent contractors, or was a sole proprietorship with no employees. In the PPP loan application, the small business (through its authorized representative or the sole proprietor) was required to provide, among other things, its average monthly payroll expenses and number of employees. In addition, businesses applying for the PPP loan were required to provide documentation confirming their

payroll expenses. Typically, businesses supplied documents showing the amount of payroll taxes reported to the Internal Revenue Service ("IRS"). The sole proprietorship had to report and document the business' income and expenses, as typically reported to the IRS on Form 1040, Schedule C. These figures and documentation were used to calculate the amount of money the small business was eligible to receive under the PPP. Sole proprietorships were eligible to receive a maximum PPP loan of up to $20,833 to cover lost income.

7. A PPP loan application was processed by a participating lender. The SBA delegated authority to third-party lenders to underwrite and approve the loans. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies, which were 100% guaranteed by the SBA. Data from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, was transmitted electronically by the lender to the SBA in the course of processing the loan.

8. PPP loan proceeds were required to be used by the business on certain permissible expenses — payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expense items within a designated period of time and used a defined portion of the PPP loan proceeds on payroll expenses.

### B. The Economic Injury Disaster Loan ("EIDL") Program

9. Before the COVID-19 pandemic, SBA's Economic Injury Disaster Loan ("EIDL") program provided low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

10. The CARES Act also authorized the SBA to provide EIDL assistance to eligible small businesses experiencing "substantial economic injury" (substantial financial disruptions)

due to the COVID-19 pandemic. In order to obtain a COVID-19 EIDL, a qualifying business was required to submit electronically an EIDL application to the SBA and provide information about its operations, such as the number of employees, gross revenues, and the cost of goods sold for the 12-month period preceding January 31, 2020. The applicant was also required to certify under penalty of perjury that all of the information in the EIDL application was true and correct to the best of the applicant's knowledge.

11. EIDL applications were submitted directly to, and processed by, the SBA, with support from a government contractor. EIDL funds were issued directly from the United States Treasury.

12. In addition, the CARES Act authorized the SBA to issue advances of up to $10,000 to small businesses within three days of applying for an EIDL. The amount of the advance was determined by the number of employees the applicant certified having at the small business. The advances did not have to be repaid.

13. SBA's email and loan application servers were located outside the State of Florida, so wire communications between banks and the SBA and between EIDL applicants located within Florida and the SBA necessarily traveled in interstate commerce.

II. **FRAUDULENT PPP AND EIDL APPLICATIONS**

14. In summary, between March and June 2020, KEOUGH submitted, or caused to be submitted, five applications through PPP and EIDL loan programs. Three of the applications, submitted through online portals with the SBA, were all approved and an aggregate of approximately $819,700.00 in funds were distributed. As noted above, in order to be eligible for a PPP or EIDL loan, one had to: (a) have an active business as of the start of the COVID-19 Pandemic; (b) have paid employees (with the exception of some sole proprietorship EIDLs); and

(c) use the proceeds of the loans to continue to operate the business and continue paying its employees. The crisis situation of the COVID-19 emergency meant that banks and the SBA had to rely on documentation provided by and sworn representations made by the applicants. However, these eligibility requirements can be cross-checked against documentation that applicants provided – or failed to provide – to other government agencies at other times.

15. A summary of each loan application submitted, or caused to be submitted, by KEOUGH is outlined below:

| **FUNDED LOAN APPLICATIONS** | | | | |
| --- | --- | --- | --- | --- |
| **APPLICATION DATE** | **COMPANY** | **AMOUNT FUNDED** | **DISBURSEMENT DATE** | **VICTIM** |
| 3/31/2020 | National Financial Holdings Inc. | $509,900.00 | 4/22/2020 | SBA - Loan amount $500,000 |
| 3/31/2020 | NFH Partners LLC | $153,900.00 | 5/20/2020 | SBA - Loan amount $150,000 |
| 4/8/2020 | Grupo Keough LLC | $155,900.00 | 6/16/2020 | SBA - Loan amount $150,000 |
| | | TOTAL: $819,700.00 | | |
| **NON-FUNDED APPLICATIONS** | | | | |
| 4/8/2020 | Grupo Keough LLC | N/A | N/A | BOA - $126,750 |
| 4/9/2020 | Enclave Partners LLC | N/A | N/A | SBA |

16. On March 31, 2020, an EIDL application was electronically submitted to the SBA online portal on behalf of National Financial Holdings, Inc. The EIDL application falsely asserted gross revenues of $2,189,102.00 for the twelve months prior to the date of the disaster, January 31, 2020. Both Derek Acree and KEOUGH are listed as business owners of National Financial Holdings Inc. and guarantors of the loan. On April 20, 2020, Acree executed (via DocuSign) the Loan authorization and agreement, Note and the security agreement. Both Acree and KEOUGH executed (via DocuSign) the Unconditional Guarantee (disaster loans) and the certificate of

completion. The application resulted in approximately $509,900.00 in loan proceeds disbursed into a BB&T bank account ending in 5893, held by NFH Florida LLC as account holder for which Acree is a signatory. Falsified bank statements and tax documents were uploaded to support the revenues listed on the application. Approximately $109,724.00 of the $509,900.00 loan funds was wire transferred to TD Bank account ending in 5925, held by NFH Partners LLC as account holder and for which KEOUGH is the sole signatory.

17. National Financial Holdings Inc., with a principal place of business in West Palm Beach, was incorporated in 2016 and became inoperative on March 1, 2020. Gregory Scott Keough is listed as the Chief Executive Officer.

18. On March 31, 2020, an EIDL loan application was electronically submitted to the SBA online portal on behalf of NFH Partners LLC. The application was approved and approximately $153,900.00 in loan proceeds was disbursed into NFH Partners LLC's TD Bank account ending in 5925. The EIDL application falsely asserted gross revenues of $496,785.00 for the twelve months prior to the date of the disaster, January 31, 2020. Bank account analysis revealed approximately $11,910.00 in gross receipts were deposited into the NFH Partners LLC TD Bank account ending in 5925, with KEOUGH and Ana Maria Keough as authorized signatories, during the period of January 1, 2019 to January 31, 2020.

19. NFH Partners LLC, with a principal place of business of 1549 Enclave Circle, West Palm Beach, was established by KEOUGH on March 23, 2015. The entity was administratively dissolved in September 2021. KEOUGH is listed as the Managing Member and Ana Maria Keough is listed as the Secretary.

20. After receiving the loan proceeds, several large cash withdrawals from the NFH Partners LLC TD Bank account ending in 5925. KEOUGH is identified as the withdrawing

account holder by the provision of his Florida Drivers' License. For example, on May 26, 2020, KEOUGH made a withdrawal of $57,500.00 at the TD Bank branch located in Royal Palm Beach. On June 17, 2020, KEOUGH made a withdrawal of $44,500.00 at the TD Bank branch located in Royal Palm Beach.

21. On April 8, 2020, an EIDL loan application was submitted to the SBA through the SBA online portal on behalf of Grupo Keough LLC. The application was approved and approximately, $155,900.00 in loan proceeds was disbursed into a Bank of America ("BOA") account ending in 1970, which is held in the name of Grupo Keough LLC as account holder. KEOUGH and Ana Maria Keough are listed as the account signatories. The EIDL application falsely asserted gross revenues of $250,000.00 for the twelve months prior to the date of the disaster, January 31, 2020. Bank account analysis revealed approximately $2,652.00 in gross receipts were deposited into the Grupo Keough LLC BOA account ending in 1970 operated by KEOUGH during the period of January 1, 2019 to January 31, 2020.

22. Grupo Keough LLC, with a principal place of business address of 1549 Enclave Circle, WPB, was established as a Florida limited liability company in June 2010. KEOUGH and Ana Maria Keough are listed as Managing Members of Grupo Keough LLC. Grupo Keough LLC was administratively dissolved in September 2021.

23. After receiving the $155,900 EIDL loan proceeds, on February 1, 2021 a check, identified with check number 1145, was written on the Grupo Keough LLC BOA account ending in 1970, in the amount of $72,450.00. Bank analysis revealed that this sum was EIDL proceeds. Check number 1145 listed Enclave Partners LLC as the payee and signed by KEOUGH. Enclave Partners LLC is a business entity for which KEOUGH and Ana Maria Keough are Managing Members. The check was deposited into Enclave Partners LLC's TD bank account ending in 4399.

KEOUGH is the sole signatory on the Enclave Partners LLC TD bank account.

24.   On April 8. 2020, a PPP loan application was submitted to Bank of America ("BOA") on behalf of Grupo Keough LLC.  The PPP loan application, which was submitted through BOA's online portal, falsely asserted Grupo Keough had six employees and an average monthly payroll of $42,250.00.  Bank account analysis revealed no evidence of payroll expenses during the period of January 1, 2019 to January 31, 2020.

25.   On April 9, 2020, an EIDL loan application was submitted to SBA, through SBA's online portal, on behalf of Enclave Partners LLC.  Enclave Partners LLC listed its gross revenues for the twelve months prior to the date of the disaster January 31, 2020, as $56,000.00.  Bank account analysis revealed approximately $17,200.00 in deposits for the same period.  The EIDL loan application was not approved.

26.   Enclave Partners LLC, with a principal place of business address of 1549 Enclave Circle, WPB, was established as a Florida limited liability company in December 2015.  KEOUGH and Ana Maria Keough are listed as Managing Members of Enclave Partners LLC.  Enclave Partners LLC is currently active.

27.   Based on the foregoing, I submit that probable cause exists to believe that, from on or about March 31, 2020 continuing to in and around February 2021, GREGORY SCOTT KEOUGH, committed the offense of wire fraud in violation of Title 18, United States Code,